

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 9, 2021

**BY ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Bruce Bagley*, 19 Cr. 765 (JSR)

Dear Judge Rakoff:

      The Government respectfully submits this letter in connection with the sentencing of defendant Bruce Bagley, which is currently scheduled for November 16, 2021, at 3:30 p.m. The defendant entered a guilty plea pursuant to a plea agreement with a stipulated guidelines range of 46 to 57 months' imprisonment. For the reasons set forth below, the Government submits that a sentence of incarceration below the applicable guidelines range is appropriate.

    A. **Offense Conduct**

      This case arises from an investigation of the laundering of proceeds of a foreign bribery and corruption scheme into the United States. PSR ¶ 11. Alex Saab is a Colombian businessman who has been charged in the Southern District of Florida with laundering the proceeds of violations of the Foreign Corrupt Practices Act. *See United States v. Saab*, No. 19 Cr. 20450 (S.D. Fla.).[1] Beginning in November 2017, Bagley began receiving regular international wire transfers into a bank account in the name of a company he controlled that had no significant prior business activity. PSR ¶¶ 12-14. From November 2017 through August 2018, Bagley received 12 wire transfers, typically in the amount of $200,000, totaling approximately $2.5 million. PSR ¶¶ 16-17, 28. These funds came from companies located overseas that were controlled by Alex Saab. PSR ¶¶ 20. The

---

[1] Saab was extradited to the United States on October 16, 2021, and the case against him is pending. *See* "Colombian Businessman Charged with Money Laundering Extradited to the United States from Cabo Verde," Department of Justice Press Release, October 18, 2021, available at https://www.justice.gov/opa/pr/colombian-businessman-charged-money-laundering-extradited-united-states-cabo-verde.

money being transferred was the proceeds of a foreign bribery scheme that involved embezzlement from a food aid program in Venezuela. PSR ¶ 21.

When he received the wire transfers, Bagley wired a portion of the proceeds, typically ten percent, to his own personal account. He then withdrew the remainder of the funds in the form of a cashier's check payable to a company controlled by another individual ("Individual-1") who was an associate of both Bagley and Saab. PSR ¶¶ 16-17. Between November 2017 and September 2018, Bagley personally reaped $192,000 in proceeds from the scheme. PSR ¶ 29. Bagley and Individual-1 executed sham contracts in an attempt to justify this pattern of transactions. In the contracts, Bagley claimed to be providing "technical advisory services" to Individual-1 relating to "extrajudicial process"; in fact, Bagley provided no such services to Individual-1. PSR ¶ 18. In October 2018, the bank closed Bagley's business account due to suspicious activity. PSR ¶ 19.

In or around November 2018, the FBI approached Individual-1, who agreed to become a confidential informant. At the direction of law enforcement, Individual-1 met with Bagley on December 4, 2018, to discuss their ongoing agreement to move funds into the United States for Alex Saab. In the conversation, which was audio recorded, Bagley and Individual-1 discussed the fact that the funds involved in the scheme represented the proceeds of a foreign bribery scheme. Bagley in particular made statements indicating his awareness not just of the general existence of the scheme, but also the specifics of how it operated. After Individual-1 stated that "all the money from [Alex Saab] … all that money is from corruption … it's dirty money," Bagley responded by saying "Yes. It is corruption." Bagley then provided additional detail, stating that "[Alex Saab] is in deep in the importing of food … of food into Venezuela. And they have imported the worse quality products with inflated prices, and they have filled their pockets with money." PSR ¶ 22.

Despite his awareness that he was moving criminal proceeds, Bagley continued to engage in the scheme. In December 2018, he provided Saab and Individual-1 with the information for a new bank account, and he then received two wire transfers for a total of $474,000 in January and February 2019. From these transfers, Bagley transferred $64,000 to his personal account, and sent the rest to the Individual-1 company. PSR ¶¶ 24-26.

### B. Procedural History

On October 24, 2019, a grand jury returned a three-count indictment charging Bagley with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). Bagley was arrested on November 18, 2019. On June 1, 2020, Bagley entered a plea of guilty, pursuant to a plea agreement, to two counts of money laundering, with a stipulated guidelines range of 46 to 57 months' imprisonment. On August 24, 2020, the United States Probation Office issued the presentence report in this case, which calculates the same guidelines range stipulated in the plea agreement and recommends a below-guidelines sentence of 12 months' imprisonment. PSR at 29.

**C. Discussion**

The sentencing factors most applicable here are the nature, circumstances, and seriousness of the offense, the personal characteristics of the defendant, and the need for adequate deterrence, primarily general deterrence. The Government submits that these factors support the imposition of a sentence of incarceration, but below the guidelines range of 46 to 57 months' imprisonment.

The defendant's criminal conduct in this case was serious. Bagley played a critical role in a sophisticated scheme to launder millions of dollars of criminal proceeds, and was compensated handsomely for his participation in the scheme. To conceal the movement of these funds, Bagley used a business account he had created for an otherwise inactive company and executed sham contracts with Individual-1 to attempt to make the transactions appear legitimate. He persisted in the scheme even after his first bank account was closed by the bank. More importantly, he continued to move hundreds of thousands of dollars even after he made it clear in his conversations with Individual-1 that he fully understood that these were proceeds of Saab's scheme to bribe Venezuelan officials so that Saab could siphon money out of Venezuela's food aid program that was intended to benefit the poor in Venezuela. In other words, Bagley knowingly transferred criminal proceeds, and took his own generous portion of those proceeds, knowing that this money was ultimately being taken from some of the poorest and most vulnerable people in the world.

The defendant's personal characteristics further underscore the seriousness of his conduct. Bagley is a highly sophisticated individual who holds a Ph.D. from UCLA and was a tenured university professor. As detailed in the PSR, he had served as a visiting professor in Colombia, Bolivia, Ecuador, and Mexico, and he provided expert witness testimony on cases involving drug trafficking and the recovery of criminal proceeds from a Colombian guerilla organization, among others. Indeed, he had specifically devoted some of his academic career to issues of money laundering and corruption. Bagley was thus in a position to be well aware of the wrongful nature of his conduct, and yet he used his sophistication and expertise to knowingly participate in the laundering of criminal proceeds with a corrupt Colombian businessman. Moreover, Bagley had far more financial and personal security than the typical criminal, with no reason apart from greed to participate in this crime. He made a conscious decision to participate in repeated transactions over the course of months, including by creating false documents to conceal his actions and by persisting in the conduct even after having a bank account shut down. His recorded comments from his December 2018 meeting with Individual-1 make it clear that he continued in this conduct with full knowledge of the nature of the underlying criminal scheme.

Nor does Bagley appear to show serious remorse for his conduct. In his interview with probation, Bagley makes several claims that are inconsistent with the evidence in the case and that appear to be calculated to minimize his role in the offense. First, he claims that the more than $200,000 in personal proceeds he made in the scheme were actually payment for consulting work he was performing for Alex Saab. That is inconsistent with the actual pattern of transactions, in which Bagley received a percentage from each of the wire transfers that passed through his account from Saab to the Individual-1 company. There is no evidence that Bagley received payments from Saab before or after he engaged in the scheme to pass criminal proceeds from Saab through his bank account, which indicates that he was being paid for his participation in the money laundering, not for "consulting." Additionally, Bagley's account of his purported work for Saab is not

supported by any evidence. He states that he was initially hired to "facilitate" a visa for Saab's son, and that he was later retained to provide "consulting work on investment possibilities for Saab in Guatemala." PSR ¶¶ 35-36. Bagley does not explain why a professor who specialized in the study of narcotics trafficking would have been well suited to advise on investment possibilities in Guatemala, which is not similar to any prior work he appears to have performed. Nor is the Government aware of any documentation of the purported consulting work that Bagley performed for Saab.

Bagley also claims that he did not know that Saab's money stemmed from his corrupt activities in Venezuela until after the conversation with Individual-1 in December 2018. PSR ¶ 37. That claim is inconsistent with the actual recording of the conversation, in which Bagley expressed no surprise about the discussion of Saab's involvement in corruption and offered additional details about Saab's corrupt scheme that went beyond the statements made by Individual-1. PSR ¶ 22. Bagley's claim is also difficult to square with his general level of sophistication regarding criminal enterprises and corruption in Latin America. While these issues do not affect the guidelines range in this case, they cast doubt on whether Bagley has fully acknowledged his role in serious criminal conduct.

Despite the aspects of Bagley's personal characteristics that counsel in favor of a substantial sentence, the Government acknowledges that his advanced age and health conditions should be taken into account, and that it would be reasonable for the Court to impose a sentence below the guidelines range due to these factors. Nonetheless, Bagley's age and health are just some of the characteristics for the Court to consider, and these factors in and of themselves should not outweigh the other 3553(a) factors that counsel in favor of a term of incarceration in this case.[2] *See, e.g., United States v. Matera*, 489 F.3d 115, 123 (2d Cir. 2007) (affirming 25-year sentence imposed on 65-year-old defendant when district court found that the other 3553(a) factors outweighed the defendant's arguments about his age and health); *United States v. Pica*, 692 F.3d 79, 89 (2d Cir. 2012) (affirming 108-month sentence imposed on 75-year-old defendant).

Finally, a sentence of incarceration is also necessary here to "afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). General deterrence is of particular relevance in a case such as this, where the conduct was deliberate, sophisticated, and unfolded over a period of months. Additionally, though Bagley's academic expertise on money laundering and corruption is unusual, many money launderers are, like Bagley, motivated primarily by greed and more likely to engage in such schemes if the perceived benefits outweigh the potential costs. A sentence of incarceration is needed in order to deter similarly situated individuals from pursuing similar schemes, which are highly lucrative and difficult to detect by law enforcement.

---

2 

  For the reasons set forth above, the Government respectfully submits that a sentence of incarceration, but below the guidelines range of 46 to 57 months' imprisonment, is appropriate for the defendant.

        Very truly yours,

        DAMIAN WILLIAMS
        United States Attorney

by: _____
        Thane Rehn/Sheb Swett
        Assistant United States Attorneys
        (212) 637-2354